**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ***Caption in Compliance with D.N.J. LBR 9004-1(b)***<br>Suzanne Demitrio Campbell<br>Senior Trial Attorney<br>U.S. Department of Labor, Office of the Solicitor<br>201 Varick Street, Room 983<br>New York, New York 10014<br>Telephone: 646-264-3674<br>Email: campbell.suzanne@dol.gov and ny-sol-ecf@dol.gov<br><br>Counsel to Creditor and Third-Party Defendant<br>Martin J. Walsh, Secretary of Labor<br>United States Department of Labor | Chapter 11<br><br>Case No.<br>21-16520-JNP |
| In re:<br><br>ALUMINUM SHAPES, L.L.C.<br><br>Debtor | |
| ALUMINUM SHAPES, L.L.C.,<br>Plaintiff,<br><br>v.<br><br>MARTIN J. WALSH, Secretary of Labor,<br>United States Department of Labor,<br><br>Defendant. | Adversary Case No.<br>21-01353-JNP |

## SECRETARY OF LABOR'S BRIEF IN OPPOSITION
## TO TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUCTION

SEEMA NANDA
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

SUZANNE DEMITRIO CAMPBELL
U.S. Department of Labor
Attorneys for Complainant
Martin J. Walsh, Secretary of Labor

Table of Contents

I.    Introduction ................................................................................................ 1

II.    The Police Power Exception to the Automatic Stay permits the Secretary of Labor's

action to go forward .......................................................................................... 2

A.    Bankruptcy law presumes that the Secretary of Labor's action will not be stayed 2

B.    The bankruptcy court does not have jurisdiction to adjudicate the Secretary of

Labor's substantive claims ................................................................................ 4

C.    The Debtor cannot show "exigent circumstances" justifying relief under 11

U.S.C. § 105 ................................................................................................. 6

III.    The Debtor cannot meet the test for injunctive relief ........................................... 7

A.    The Secretary of Labor is charged with protecting employee safety, and

employees will remain in serious danger if the OSHRC administrative hearing is stayed ........ 8

B.    The Debtor's self-imposed financing crisis does not constitute irreparable harm

and does not justify an injunction ........................................................................ 10

C.    The Debtor grossly misrepresents the administrative rulings in the OSHA case

and is not likely to succeed on the merits ............................................................... 14

D.    The stay sought by the Debtor will not be short and the delay will prejudice the

Secretary of Labor ........................................................................................... 17

IV.    The Debtor misled the Court about the unjustified ex parte nature of its

Application for a Temporary Restraining Order ......................................................... 20

V.    The Debtor alleges a false choice between stay and default, while the Secretary of

Labor stands ready to negotiate a resolution on the merits............................................................ 22

VI.    Conclusion ............................................................................................................... 22

<u>Table of Authorities</u>

Cases

*Ackermann Enters., Inc.*, 10 BNA OSHC 1709, 1711-12 (No. 80-4971, 1982) ........................ 14

*AFL–CIO v. Brennan,* 530 F.2d 109, 123 (3d Cir. 1975) ............................................. 7

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, No. 21A23, 2021 WL 3783142, at

    *2 (2021) .................................................................................. 9

*Brock v. Morysville Body Works, Inc.*, 829 F.2d 383 (3d Cir. 1987) ......................... 6, 7

*Chao v. Barbosa Group, Inc.,* 296 Fed. Appx. 211, 213, 2008 WL 4645155, at *1 (2d Cir. 2008)

    ............................................................................................. 10

*E.E.O.C. v. Krystal Co.,* 615 B.R. 332, 336 (N.D. Ga. 2020) ..................................... 11

*E.E.O.C. v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986) ............................... 11

*FiberTower Network Servs. Corp. v. FCC (In re FiberTower Network Servs. Corp.)*, 482 B.R.

    169, 182 (Bankr. N.D. Tex. 2012). .......................................................... 8

*In re Belmonte*, No. 12-76045-AST, 2017 WL 818257, at *4 (Bankr. E.D.N.Y. Feb. 28, 2017) 11

*In re First All. Mortg. Co.,* 264 B.R. 634, 659 (C.D. Cal. 2001) .................................. 7

*In re Morningstar Marketplace, Ltd,* 544 B.R. 297, 303 (Bankr. M.D. Pa. 2016) ...................... 12

*In re Nortel,* 669 F.3d 128, 139 (3d Cir. 2011) ................................................. 6

*In re Philadelphia Training Ctr. Corp.,* 155 B.R. 109 (E.D. Pa. 1993) ......................... 7

*In re The Billing Res.,* No. 07-52890-ASW, 2007 WL 3254835, at *11 (Bankr. N.D. Cal. Nov. 2,

    2007) ..................................................................................... 7, 12

*In re Zenith Laboratories, Inc.,* 104 B.R. 659, 665 (D.N.J.1989) .................................. 9

*Jaye v. Hoffman*, 717 F. App'x 187, 189 (3d Cir. 2018) ........................................ 10

*Matter of Brennan,* 198 B.R. 445, 451 (D.N.J. 1996) ........................................... 8, 9

*MJP Constr. Co., Inc.*, 19 BNA OSHC 1638, 1647 (Rev. Comm. 2001) ...................................... 10

*N.L.R.B. v. Superior Forwarding Inc.,* 762 F.2d 695, 699 (8th Cir. 1985) .................................... 8

*Nix v. Williams*, 467 U.S. 431, 443 (1984) ................................................................................ 14

*Nken v. Holder*, 556 U. S. 418, 434 (2009) ............................................................................... 9

*Penn Terra Ltd. v. Dep't of Env't Res., Com. of Pa.,* 733 F.2d 267, 278 (3d Cir. 1984) ............. 11

*Reich v. Occupational Safety & Health Rev. Comm'n and Jacksonville Shipyards,* 102 F.3d 1200,

    1203 (11th Cir. 1997)........................................................................................................... 10

*Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582 (2d Cir. 1983) ........................................ 7

*Solis v. Makozy*, No. 09-01265, 2012 WL 1458232, at *2 (W.D. Pa. Apr. 27, 2012).................... 6

*Stewart v. Holland Acquisitions Inc.,* 2021 WL 1037617 (W.D. Pa. 2021) .................................. 6

*United States v. Nicolet, Inc.*, 857 F.2d 202, 208 (3d Cir. 1988)........................................... 6, 8, 9

Statutes

11 U.S.C. § 105 .......................................................................................................................... 8

11 U.S.C. § 157(b)(2) ................................................................................................................. 7

11 U.S.C. § 362(b)(4) ........................................................................................................ 5, 6, 10

11 U.S.C. § 502........................................................................................................................... 8

29 U.S.C. § 661 .......................................................................................................................... 5

29 U.S.C. § 666........................................................................................................................ 7, 10

## I.    Introduction

The Secretary of Labor, United States Department of Labor vigorously opposes the entry

of a Preliminary Injunction staying his administrative litigation in this matter, and urges that the

Temporary Restraining Order entered on August 26, 2021 be dissolved immediately. The Debtor

obtained this TRO on false pretenses: it represented that its Application for Temporary

Restraining Order was made on notice when it was not, it materially misrepresented the facts

regarding the administrative litigation to be stayed, and it did not address or follow mandatory

law governing its request. As set forth below, the Secretary of Labor's OSHA matter – a

regulatory matter brought by a governmental unit to address and correct violations pertaining to

employee safety and health – is expressly exempt from the Bankruptcy Code's automatic stay

provision under 11 USC 362(b)(4)'s police power exception, and Debtor has not and cannot

establish the grounds for 105(a) preliminary injunctive relief. This matter is urgent because the

administrative hearing at issue is set to begin on September 7, 2021.

The Secretary of Labor is the second-largest unsecured creditor in the Aluminum Shapes

LLC bankruptcy. Our $2.07 million unliquidated claim arises out of penalties assessed by the

Occupational Safety and Health Administration for 97 items of regulatory violations which

severely endangered the health and safety of the Debtor's employees. As a result of these

numerous violations, employees suffered broken bones and severe chemical burns, and one

employee died from his injuries. Many of these violations are classified as repeated or willful,

reflecting the Debtor's persistent failure to remediate documented hazards in its workplace. The

Debtor has contested these citations and penalties before the Occupational Safety and Health

Commission (OSHRC), the specialized administrative forum which has exclusive original

jurisdiction over such matters pursuant to 29 U.S.C. § 661. The administrative hearing which the

1

Debtor requested in these matters is scheduled to begin on September 7, 2021. This hearing can and must proceed pursuant to the police powers exception to the bankruptcy court's automatic stay, 11 U.S.C. § 362(b)(4). The Secretary of Labor has a particularly strong public interest in the timely affirmance of these citations because we believe that the Debtor is continuing to operate its aluminum foundry unsafely, and its employees remain exposed to many of the cited hazards. The Debtor's statutory obligation to abate those hazards hinges on the resolution of its administrative contest.

Instead of addressing its obligations to both the Bankruptcy Court and the Occupational Safety and Health Review Commission in good faith, the Debtor has interposed numerous misrepresentations and faulty arguments to obtain a Temporary Restraining Order *ex parte* against the Secretary of Labor. For the reasons discussed below, the Temporary Restraining Order should be immediately vacated pending the Preliminary Injunction hearing scheduled for September 2, 2021.

## II.     The Police Power Exception to the Automatic Stay permits the Secretary of Labor's action to go forward

### A.     *Bankruptcy law presumes that the Secretary of Labor's action will not be stayed*

The Debtor's Application entirely ignores the relevant provision of the bankruptcy code which governs its request for stay. 11 U.S.C. § 362(b)(4) reads in relevant part:

> The filing of a petition . . . does not operate as a stay . . .of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power[.]

2

The legislative history of the Bankruptcy Reform Act of 1978, the modern bankruptcy statute, explains that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." S.Rep. No. 989, at 52, 1978 U.S. Code Cong. & Admin. News at 5838; H.R.Rep. No. 595, at 343, 1978 U.S. Code Cong. & Admin. News at 6299. *United States v. Nicolet, Inc.*, 857 F.2d 202, 208 (3d Cir. 1988).

The Secretary of Labor, acting on behalf of the United States Department of Labor, is a "governmental unit" as defined by the statute. *Stewart v. Holland Acquisitions Inc.,* 2021 WL 1037617 (W.D. Pa. 2021). In the pending OSHRC administrative matters, "the Secretary is not seeking the enforcement of a [money] judgment, but the entry of judgment against defendant," a distinction that puts the exception on the table. *See Solis v. Makozy*, No. 09-01265, 2012 WL 1458232, at *2 (W.D. Pa. Apr. 27, 2012) (discussing legislative history of 11 U.S.C. § 362(b)(4)).

The Third Circuit applies two "overlapping" and "complementary" tests to determine whether the governmental unit's action advances the unit's "police or regulatory power" such that the exception to the automatic stay would be triggered. *Holland Acquisitions* at *4. "[C]ourts have applied . . . the pecuniary purpose test and the public policy test." *In re Nortel,* 669 F.3d 128, 139 (3d Cir. 2011). The pecuniary purpose test focuses on "whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *Id.* The public policy test "asks whether the government is effecting public policy rather than adjudicating private rights," which analyzes

3

whether the action's primary purpose is to "promote public safety and welfare or to effectuate public policy." *Id.* at 140.

Here, the Secretary of Labor has a compelling interest "to correct violations of regulatory statutes enacted to promote health and safety," such as the OSH Act. *See Brock v. Morysville Body Works, Inc.*, 829 F.2d 383 (3d Cir. 1987) (holding that 11 U.S.C. § 362(a) does not stay Commission proceedings to determine liability for OSHA violations, fix abatement obligations, and assess civil money penalties.) Consistent with Congress's intent, the Secretary of Labor is suing "to prevent or stop a violation of … safety" regulations.

The Third Circuit's decision in *Brock* squarely addresses this point. There, the Third Circuit held that OSHA's police power was exempt from the Bankruptcy Code's automatic stay provision, and that OSHA was entitled to obtain and enforce a final order requiring the abatement of safety and health violations intended to "prevent future harm to employees and to restore the work site to a safe condition." *Id.* at 388. The Third Circuit found this to be the case notwithstanding the potential adverse effect on a financially distressed business, acknowledging that "Congress did contemplate that the Secretary's rule making would put out of business some businesses so marginally efficient or productive as to be unable to follow standards otherwise universally feasible.") *Id.* at 389 (citing *AFL–CIO v. Brennan,* 530 F.2d 109, 123 (3d Cir. 1975)).

**B.      *The bankruptcy court does not have jurisdiction to adjudicate the Secretary of Labor's substantive claims***

The Debtor glibly asserts that "OSHA has submitted its Claims to the jurisdiction of this Court by filing the Proof of Claims". [21-01353-JNP, Doc. 1, ¶87.] This is of course untrue. The bankruptcy court does not and cannot have jurisdiction over the substance of the Secretary of Labor's OSHRC administrative action. It is not a core bankruptcy proceeding under 11 U.S.C. § 157(b)(2). The OSHA violations which the Secretary seeks to prosecute arose years before the

Debtor filed for bankruptcy. They have a "life of [their] own in either state or federal common law or statute independent of the federal bankruptcy laws", and are therefore a non-core proceeding. *Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582 (2d Cir. 1983). The resolution of the Secretary of Labor's claims will require substantial and material consideration of a non-bankruptcy statute which has more than a de minimis impact on interstate commerce, and therefore cannot be adjudicated by the bankruptcy court. 11 U.S.C. § 157(b)(4);  *In re Philadelphia Training Ctr. Corp.,* 155 B.R. 109 (E.D. Pa. 1993).

In fact, the Occupational Safety and Health Act vests exclusive jurisdiction in the Occupational Safety and Health Review Commission. 29 U.S.C. § 666. Neither the bankruptcy court nor the district court can try the Secretary of Labor's claims. Only OSHRC can determine, in the first instance, whether regulations have been violated, how those violations should be characterized, and what penalty applies. OSHRC's orders compel employers to abate hazards. The Commission's decisions cannot even be appealed to district court; they go to the Circuit Courts for review. The bankruptcy court thus cannot exert jurisdiction over the Secretary of Labor's substantive claims. "As Congress recognized when it created the regulatory and police powers exception, the goals of public policy, punishment, and deterrence may sometimes conflict with the goals of maximizing an individual estate's assets and efficiently processing claims. It is the former goals, which are difficult if not impossible to measure in dollars and cents, that are impaired when a governmental unit loses the ability to enforce its laws in its own forum*." In re The Billing Res.,* No. 07-52890-ASW, 2007 WL 3254835, at *11 (Bankr. N.D. Cal. Nov. 2, 2007), *quoting In re First All. Mortg. Co.,* 264 B.R. 634, 659 (C.D. Cal. 2001).

The Secretary of Labor filed his Proof of Claim because the police power exemption, discussed above, only extends to the determination of violation and liability. In order to preserve

the ability to recover monetarily, all creditors must file a proof of claim. See 11 U.S.C. § 502.

However, significantly more than money damages are involved on the OSHA litigation, and the

bankruptcy court lacks jurisdiction to adjudicate these issues.  Thus, the debtor's argument that

the Secretary of Labor cannot have it "both ways" (i.e., file a proof of claim and proceed with

unstayed litigation) is completely incorrect and unsupportable.

### C.    The Debtor cannot show "exigent circumstances" justifying relief under 11 U.S.C. § 105

The Debtor, by contrast, cannot show exigent circumstances to attempt to justify the

relief it seeks. As this District has held:

> The plain language of 11 U.S.C. § 105 restrains the bankruptcy court's discretionary authority to issue § 105 injunctive relief, as the statute specifically states that any action taken under § 105 must be designed to carry out the provisions of the bankruptcy code. Because the bankruptcy code expressly exempts state actions brought under state police or regulatory powers from the automatic stay, it is only in rare cases that a § 105 injunction of a police power exercise will "carry out" the code's provisions. […]
>
> Although there are limited circumstances in which a bankruptcy court may stay a state police power exercise under 11 U.S.C. § 105, there must be a finding of serious conflict between the continuance of the state action and the policies of the bankruptcy code.

*Matter of Brennan,* 198 B.R. 445, 451 (D.N.J. 1996). Such injunctions are "a rare remedy"

granted only in "exigent circumstances," such as where there is a "serious conflict between the

continuance of the state action and the policies of the bankruptcy code." *Id.* at 451-52. Here, the

Debtor has made no showing that such circumstances exist. *See id.* ("[w]e agree … that the

debtor's lack of a "breathing spell" due to a state regulatory proceeding cannot constitute a

serious conflict between the state regulatory action and the bankruptcy process") (citing *U.S. v.

Nicolet*, 857 F.2d 202, 207 (3d Cir. 1988)) (concluding that the breathing spell rationale cannot

outweigh the police power exception).

The cases which the Debtor cites for "exigent circumstances" are inapposite here. *FiberTower* enjoins the cancellation and re-auction of an FCC license which is the property of the bankruptcy estate. *FiberTower Network Servs. Corp. v. FCC (In re FiberTower Network Servs. Corp.)*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012). *Superior Forwarding* involves a Debtor's right to unilaterally modify a collective bargaining contract in bankruptcy. *N.L.R.B. v. Superior Forwarding Inc.,* 762 F.2d 695, 699 (8th Cir. 1985). The Secretary of Labor, by contrast, is seeking only to determine liability and abatement for regulatory safety and health violations.

As the Third Circuit observed, "the stay provision [of 11 U.S.C. § 362(a)] was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions. To combat the risk that the bankruptcy court would become a sanctuary for [wrongdoers] Congress enacted the police and regulatory power exception to the automatic stay." *U.S. v. Nicolet*, 857 F.2d 202, 207 (3d Cir. 1988). The Debtor is abusing the bankruptcy code in exactly that way by seeking to frustrate the Secretary of Labor's enforcement action here.

## III.    The Debtor cannot meet the test for injunctive relief

Courts consider four factors in determining whether to grant injunctive relief:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding;

and (4) where the public interest lies.

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, No. 21A23, 2021 WL 3783142, at

\*2 (2021), citing *Nken v. Holder*, 556 U. S. 418, 434 (2009); *see also Brennan* at 452, citing *In*

*re Zenith Laboratories, Inc.,* 104 B.R. 659, 665 (D.N.J.1989) (noting that bankruptcy courts use

the same four-pronged test).[1] As discussed below, the Debtor makes a weak and flawed

argument for "irreparable harm" in that it will have to expend resources defending the Secretary

of Labor's action. But the Debtor does not and cannot allege that it is likely to succeed on the

merits of the Secretary of Labor's action, which rests on well-documented health and safety

violations. Instead, the Debtor misrepresents the nature of that action, falsely claiming that all the

violations at issue arise out of an "illegal search". The Secretary of Labor will be substantially

injured by a stay of the OSHRC proceedings, in that safety hazards in the Debtor's facility will

remain uncorrected and continue to endanger employees until the issued violations are

adjudicated and abated. The public interest clearly favors permitting safety and health laws to be

swiftly enforced.

> **A.     *The Secretary of Labor is charged with protecting employee safety, and
> employees will remain in serious danger if the OSHRC administrative hearing is stayed***

The need for vigorous and timely OSHA regulatory enforcement is particularly urgent

here, because the Debtor has a long history of endangering, maiming and killing its employees

through notorious noncompliance with health and safety regulations. Over the course of the past

five years, OSHA has inspected the Debtor's facility ten times. Seven of those inspections

---

[1] The Debtor cites a different test for injunctive relief, urging the court to consider its "reasonable likelihood of a successful reorganization" rather than its success on the merits in the Secretary of Labor's litigation. Doc. 2, ppp 80, citing *In re Monroe Well Service, Inc.,* 67 B.R. 746, 752-3 (Bankr. E.D. Pa. 1986) and *Official Comm. of Unsecured Creditors v. Bechtle (In re LaBrum & Doak, LLP),* 237 B.R. 275, 306-7 (Bankr. E.D. PA. 1999). But this test "address[es] the extension of the automatic stay to nondebtors." which is not the fact pattern here. *In re D'Angelo,* 475 B.R. 424, 444 (Bankr. E.D. Pa. 2012), *aff'd*, 491 B.R. 395 (E.D. Pa. 2013). The Debtor is seeking to enjoin the Secretary of Labor's suit against itself, not against a third party.

involved reported employee injuries; one involved a fatality. *Dixon-Roderick Dec.* at ¶ 3. The

Debtor's own injury logs during this time period are a parade of horribles, testament to its

dangerous safety and health practices. Year after year, employees' fingers are amputated, their

hips, legs, and feet are fractured, their hands and feet are burned by heat and chemicals, and they

suffer concussions, lacerations, bruises, and other injuries. *Dixon-Roderick Dec.* at ¶¶ 6-14.

The hearing scheduled for September 7, 2021 involves several grave injuries. One

employee's leg was crushed by moving parts while he was dislodging a piece of metal from a

cold saw table on the extrusion line, which had not been locked out to prevent harm. He died

from his injuries. *Dixon-Roderick Dec.* at ¶ 12. Another employee's pelvis was broken by

moving parts while she operated an extrusion line. *Dixon-Roderick Dec.* at ¶ 13. Seven

employees were ordered to enter a tank of toxic sludge with inadequate protective gear, and

suffered serious chemical burns on their bodies and problems breathing. *Dixon-Roderick Dec.* at

¶ 14. The violations which caused these injuries, as well as many others which are just as likely

to kill or maim employees, must be adjudicated so that the Secretary can enforce their abatement.

The Debtor has already accepted (through prior settlements with the Secretary) 77

violation items from prior OSHA inspections. Many of those violations were observed again in

subsequent inspections, and were cited again with escalating penalties. The violations scheduled

for administrative hearing thus include eighteen repeated violations. They also include eight

violations which the Secretary of Labor classified as willful. A violation is willful under the

Occupational Safety and Health Act,  29 U.S.C. § 666,  if the employer's state of mind at the

time of the violation was that of an "intentional, knowing, or voluntary disregard for the

requirements of the Act or … plain indifference to employee safety." *E. Smalis Painting Co.*,

*Inc.,* 22 BNA OSHC 1553, 1569 (2009) (citing *Kaspar Wire Works, Inc.*, 18 BNA OSHC 2173,

2181 (2000)). The key element is proof of the employer's "heightened awareness of the violative

nature of its conduct or the conditions at its workplace." *Chao v. Barbosa Group, Inc.,* 296 Fed.

Appx. 211, 213, 2008 WL 4645155, at *1 (2d Cir. 2008) (quoting *MJP Constr. Co., Inc.*, 19

BNA OSHC 1638, 1647 (Rev. Comm. 2001)).

Given the gravity of the violations involved, and the hazards to which the Debtor's

employees are continually exposed, it is urgent that this matter be resolved without further

needless delay. By the Debtor's own admission, employees are still working in its factory, and

they must be protected from further harm. "As long as a business operates, it should feel itself to

be effectively under the applicable laws and regulations—even on the last day." *Reich v.

Occupational Safety & Health Rev. Comm'n and Jacksonville Shipyards,* 102 F.3d 1200, 1203

(11th Cir. 1997). The Secretary of Labor therefore insists that his prosecution of these violations

go forward pursuant to the police power exception contained in 11 U.S.C. § 362(b)(4).

**B.      *The Debtor's self-imposed financing crisis does not constitute irreparable harm and
does not justify an injunction***

The Debtor asserts the specious and illogical argument that the OSHRC administrative

hearing should be stayed because the Debtor would have to pay its lawyer to litigate. However,

the Third Circuit has held that being forced to pay the costs of litigation does not constitute

irreparable harm justifying an injunction. *Jaye v. Hoffman*, 717 F. App'x 187, 189 (3d Cir. 2018).

This is particularly true where, as here, the government's police power is at stake. "Congress by

excepting certain actions from the automatic stay provision recognized that the debtor would

likely incur litigation expenses as a result of any excepted lawsuit." *E.E.O.C. v. Rath Packing

Co.*, 787 F.2d 318, 325 (8th Cir. 1986) (holding that litigation expenses alone do not justify a

discretionary stay under § 105), citing *Penn Terra Ltd. v. Dep't of Env't Res., Com. of Pa.,* 733

F.2d 267, 278 (3d Cir. 1984); see also *E.E.O.C. v. Krystal Co.,* 615 B.R. 332, 336 (N.D. Ga.

2020). See also *In re Belmonte*, No. 12-76045-AST, 2017 WL 818257, at *4 (Bankr. E.D.N.Y.

Feb. 28, 2017) (an injury arising from the delay and cost of litigation is legally insufficient to

establish irreparable harm).

This is a "problem" of the Debtor's own creation, and deserves no sympathy from the

Court. The Court has already given the Debtor approval to raise $15 million in post-petition

financing, and approved a "DIP Budget" for the Debtor to continue in business. [21-16520-JNP,

Doc. 47, Exh. 1].  The Debtor's CFO asserts that:

> 4. I was personally involved with the DIP Budget and worked with the Debtor's
> lender to have the DIP Budget approved.
>
> 5. There are no funds allotted in the current DIP Budget for the current defense of
> the OSHA Action. The DIP Budget goes through November 1, 2021.

[21-01353-JNP, Doc. 2-3, Exh. B (Meyers Aff.), ¶¶ 4-5]. He does not discuss *why* he

proposed a budget which failed to allocate any funds to the Debtor's representation at a hearing

that was less than a month away. He does not suggest that the Debtor's lender or the Court

refused to allow such an expenditure, or even that he proposed it. And he does not attempt to

explain how $15 million in financing is somehow too small to cover $400,000 in projected

administrative litigation costs. Instead, the Debtor tries to use its budgeting failure as an excuse

for disrupting the administrative hearing process, and imposing on the Secretary of Labor,

OSHRC, and this Court.

The Debtor has been actively involved in the pending OSHRC litigation for years, and its

failure to plan or budget for it is inexplicable. The order scheduling the upcoming September 7,

2021 hearing was issued a full year ago, on August 27, 2020. *Scheduling Order.* The Debtor is

well aware of this litigation, and has been actively participating in it throughout, including recent

high-volume legal work. On June 7, 2021, Debtor filed <u>twelve</u> motions in limine in the OSHRC

administrative matter. And as recently as August 13, 2021, two days before its bankruptcy

petition was filed, Debtor submitted its portion of the Joint Pretrial Statements to OSHRC. In

fact, the Debtor's counsel participated in a prehearing logistics conference in the OSHRC matter

at 10 a.m. on August 26, 2021, while this Application was pending, without telling the OSHRC

ALJ that he had signed an affidavit filed with this Court the previous evening stating "if asked to

proceed in the OSHA Action, I will have no choice but to withdraw from the matter". [Doc 2-5,

Exh. D (Horn Aff.), ¶12]. Clearly the Debtor was aware of this OSHRC litigation, has long been

preparing to try the OSHRC cases, and led the OSHRC ALJ to believe (contrary to the

Application) that it intended to appear at the hearing in these matters as scheduled. The Debtor

cannot now feign surprise that the OSHRC hearing is imminent and that its lawyer would be

expected to participate and be paid[2].

In fact, it is not clear whether Debtor ever intended to tell its post-petition lender, or other

creditors, about the upcoming OSHRC litigation at all. Debtor's bankruptcy petition

systematically conceals the existence and scope of the Secretary of Labor's administrative

action. Although the Occupational Safety and Health Administration is identified as an

unsecured creditor on the amended matrix [21-16520-JNP, Doc. 6-3], we are not included in the

Consolidated List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

[21-16520-JNP, Doc 6-2]. This cannot be a trivial or inadvertent mistake. Our unliquidated claim

for $2.07 million is larger than all but one of the unsecured claims on that list, which range from

$6.8 million to $81,876.  Furthermore, the Debtor filed a First Day Declaration which lists

"pending litigation and judgments" [21-16520-JNP, Doc. 17, ¶22], but does not mention its

---

[2] Unlike federal courts, the Occupational Safety and Health Commission does not require that corporations be represented by attorneys. "A corporation or unincorporated association may be represented by an authorized officer or agent." 29 C.F.R. § 2200.22(a). This litigation could therefore go forward even if Debtor's counsel withdraws.

contest of the OSHA citations or the hearing set for September 7, 2021. The Secretary of Labor

is particularly troubled by these omissions, because in a case where no Trustee has been

appointed, we must rely on the Debtor-in-possession to treat us and other creditors with fairness

and candor. "In exchange for the authority to continue to manage the business affairs of a

company, a debtor-in-possession owes fiduciary duties to its creditors and the estate. These

duties include the duty of care to safeguard estate assets, the duty of loyalty and the duty of

impartiality." *In re Morningstar Marketplace, Ltd,* 544 B.R. 297, 303 (Bankr. M.D. Pa. 2016)

(internal citations omitted).

The Debtor further argues that its managers would be "distracted" by having to prepare

for and testify at trial, because they are engaged in the day-to-day operations of the Debtor's

factory [21-01353-JNP, Doc. 2, ¶60; Doc. 2-4, Exh. C, Rosenthal Aff.]. In that, the Debtor is no

different from any other company defending an OSHA matter. Per its own representation, Debtor

has 111 employees, including other managers who have not been designated as witnesses by

either party. It is frivolous for the Debtor to argue that the absence of a single managerial witness

at any given time for testimony in a courthouse just a few miles away will drastically impact its

operations. These facts can easily be distinguished from *The Billing Resource,* where a small

company's president would have been obliged to travel personally from California to Florida for

weeks to defend an action. *In re The Billing Res.*, No. 07-52890-ASW, 2007 WL 3254835, at

*17 (Bankr. N.D. Cal. Nov. 2, 2007).

The Debtor's sophistical argument that it cannot afford to fund or staff its defense in the

OSHRC litigation must therefore be rejected. The cost and inconvenience of litigation cannot

justify a stay, and the Debtor has not even credibly shown that it is unable to pay that cost. The

truth is that the Debtor failed to budget for this litigation, or even to disclose its existence and

13

extent on its petition. Pretending that the Secretary's litigation does not exist is not an acceptable

strategy for making it go away, and should not be rewarded by the granting of a stay.

**C.      The Debtor grossly misrepresents the administrative rulings in the OSHA case and is
not likely to succeed on the merits**

Rather than acknowledging the substance of its health and safety violations, the Debtor

has chosen to defame the Secretary of Labor with misrepresentations that flatly contradict the

text of the interim administrative decisions already issued in the OSHRC matter. The violations

which will be litigated at the September 7, 2021 hearing do not arise from "artifice" or "illegal"

or "secret efforts", but rather from inspection activities authorized by statute and entries to which

Debtor's managers gave consent.

The Debtor's Verified Complaint makes the outrageous false claim that:

> During the course of the prosecution of the OSHA Action, the Administrative
> Law Judge overseeing the Action determined that the Secretary violated the
> Debtor's Fourth Amendment rights by an improper search and seizure in violation
> of the Debtor's rights, by through artifice, conducting illegal searches at the
> Debtor's facility.

[21-01353-JNP, Doc. 1, ¶10.] Debtor's Application piles on further demonstrably untrue
allegations:

> 28. However, unbeknownst to the Debtor, OSHA far exceeded its lawful presence
> on the property by engaging in secret efforts to find new violations and issue
> citations, both in violation of the parties' settlement agreement.

> 29. OSHA's illegal efforts resulted in the vast majority of the additional
> citationscurrently pending against the Debtor.

[21-01353-JNP, Doc. 2, ¶¶ 28-29.] The Debtor is thus willfully mischaracterizing a decision

issued by the OSHRC ALJ resolving the Debtor's Motion to Suppress Evidence. To summarize

that decision's findings, the Debtor and the Secretary of Labor entered into a stipulated

14

settlement in which the Debtor accepted violations issued in a 2015 inspection. *Three-Part OSHRC ALJ Decision*[3], p. 8. That settlement included a provision authorizing OSHA to conduct "monitoring inspections" to verify the Debtor's compliance with the settlement agreement. *Id.* at p. 9. When OSHA entered the Debtor's facility on January 23, 2017, the Debtor knowingly consented only to a "monitoring inspection", not to a "follow up inspection" which could result in new violations and penalties. *Id.* at pp. 11-15. The ALJ's decision[4] emphasized that this defect in consent resulted from confusion among the parties, not from any "secret efforts" or other bad conduct on the Secretary of Labor's part:

> The record does not show deceit, trickery, or misrepresentation by the Secretary. However, the evidence here reveals that there was general confusion and lack of clarity between the parties regarding the nature of the January 23 and 24 walk-through inspection. There is no evidence the Secretary or his representatives took an affirmative action to represent they would only conduct a monitoring inspection. Just as Respondent did not agree to a follow-up inspection, the Secretary did not agree to a monitoring inspection. Inexplicably, the parties' attorneys agreed to proceed with the walk-through without resolving the disagreement. Consent to enter Respondent's facility was not adduced by deceit, trickery, or misrepresentation.

*Id.* at 13. The ALJ therefore directed only that limited evidence would be suppressed. The only evidence that is to be suppressed pursuant to the ALJ's order (which the Secretary of Labor may appeal) is evidence gathered on January 23 and 24, 2017 (but not the later dates), and only then if the violations were not based on plain view observations within the scope of a monitoring inspection and related to abatement of 2015 Citations. *Id* at 19. Far from finding that OSHA "far

---

[3] Retrieved at https://www.oshrc.gov/assets/1/18/Aluminum_Shapes%5E17-1380_17-0646_for_website.pdf?10156

[4] This ALJ decision addressed two separate motions brought by the Debtor: one for suppression and another for estoppel. The Debtor appealed to the Occupational Safety and Review Commission, which reversed and remanded only the portion of the decision addressing estoppel; the ALJ's findings and conclusions with respect to consent and suppression were not disturbed. See Remand Decision at https://www.oshrc.gov/assets/1/18/Aluminum_Shapes%5E17-1380_17-0646_for_website.pdf?10156

exceeded its lawful presence", as Debtor contends, the ALJ affirmed that OSHA entered the

facility with consent, and that

> Respondent knew that during a monitoring inspection, it was subject to citation
> for other violations in plain view. Evidence obtained for alleged violations that
> were in "plain view" on January 23 and 24, 2017, may be submitted as proof in a
> hearing on the merits. *See Ackermann Enters., Inc.*, 10 BNA OSHC 1709, 1711-
> 12 (No. 80-4971, 1982) ("if the inspector is granted permission to be in a
> particular area, his observation of objects in plain view from that area is not a
> constitutional violation") (citation omitted).

*Id.* at 15. The Debtor correctly notes that OSHA's inspection continued "over the course of the

next month". [21-01353-JNP, Doc. 2, ¶ 27.] What the Debtor fails to mention is that OSHA's

subsequent entries were driven by subsequent employee injuries (including the broken pelvis and

chemical burns discussed *supra*) and complaints which OSHA received from the Debtor's

employees. Those inspection activities were not "secret" or "illegal" – OSHA inspectors entered

the facility with the consent of the Debtor's managers. The ALJ therefore held that none of the

evidence obtained after February 1, 2021 would be suppressed:

> OSHA returned to Respondent's facility an additional thirteen times, on or after
> February 1, 2017, in response to complaints and injury referrals. These thirteen
> subsequent entries were distinct events and the issue of consent for these thirteen
> entries is not at issue here. […] Because the entries on or after February 1, 2017,
> were distinct and unrelated to the consent provided for January 23 and 24, 2017,
> the related evidence for these violations may be submitted at a hearing on the
> merits. *See Nix v. Williams*, 467 U.S. 431, 443 (1984) ("The independent source
> doctrine allows admission of evidence that has been discovered by means wholly
> independent of any constitutional violation.").

*Id.* at 15. The ALJ's limited suppression order thus does not affect "the vast majority of the

additional citations currently pending against the Debtor", as the Debtor inaccurately contends,

but only at most a handful of the 97 violations at issue. Most of the violations at issue were

observed after February 1, 2017, or in plain view on January 23-24, 2017, and the ALJ has

scheduled the upcoming trials to hear such claims. Moreover, three of the pending violations

arise out of a different inspection conducted in September 2016 in response to the injury that led to an employee's death.

The Secretary of Labor's administrative prosecution is thus soundly based on observations made during inspections conducted with the Debtor's consent. The Secretary is prepared to present a strong case on the merits of each of the cited violations, while the Debtor has not even attempted to show how it can prevail on any of them. The Debtor's attempt to misrepresent the actions of the Secretary's inspectors as dishonest villains is unsupported, unsavory, and directly contradicted by the OSHRC ALJ's decision. This Court should disregard the Debtor's baseless allegations.

### D.     *The stay sought by the Debtor will not be short and the delay will prejudice the Secretary of Labor*

In an affidavit supporting its Application, the Debtor disingenuously asserts that it will be prepared to defend the OSHRC proceedings "after its sale is complete, in November of 2021", and that "a short stay" will not prejudice the Secretary. [21-01353-JNP, Doc 2-5, Exh. D (Horn Aff.) , ¶14,  ¶16]. The Application itself, however, specifies no end date for the stay it seeks; it is to be indefinite until lifted. For reasons grounded both in bankruptcy procedure and Occupational Safety and Health Review Commission practice, the Debtor's promise that the stay will be "short" is not credible. It is most likely that any stay would last well into 2022, and that the OSHRC matter would not be rescheduled for hearing for months after the stay was eventually lifted. Prejudice to the Secretary must be evaluated on the basis of this probable outcome, not on the Debtor's unsubstantiated hopes.

The Occupational Safety Review Commission has an average caseload of more than 3,000 cases per year, and a trial-level bench comprised of only twelve administrative law judges.

17

*U.S. Occupational Safety and Health Commission Accountability Report, FY2020*[5], p. 10;

*OSHRC website*[6]. These judges are based in Washington, DC, Atlanta, GA, and Denver, CO.

"[T]hey travel, as necessary, to adjudicate cases in locales near where the alleged workplace

violations took place." *OSHRC Accountability Report* at p. 1. The administrative hearing in the

Aluminum Shapes matter, for example, is assigned to an ALJ based in Washington, and will take

place in a courtroom belonging to the Federal Tax Court in Philadelphia. *OSHRC Scheduling

Order.* Because OSHRC does not have its own offices or courtrooms, it is perforce dependent on

the courtesy and generosity of federal and state courthouses for the loan of available courtroom

space. This is a significant complicating factor in scheduling a multi-week OSHRC hearing,

especially in light of the COVID-related backlogs many court systems now face. Furthermore,

the assigned ALJ's own schedule is already filled with other matters – each ALJ disposes of an

average of more than 150 cases per year. *OSHRC Accountability Report* at p. 10, calculation.

Our September 7, 2021 hearing date was set more than a year in advance. OSHRC notes that

"more complex and contentious cases […] consume extensive judicial time ... [L]egal research

and decision-writing time is protracted, and of necessity, the trial process is elongated and

complicated." *OSHRC Accountability Report* at p. 2. Even a "short" stay through November

2021 is therefore likely to result in a very long delay beyond that date. If we are forced to forgo

the September 7 hearing date that has already been set, we will almost certainly have to wait

many additional months for the ALJ and the courthouse to find enough space on their schedules

again to accommodate our complex hearing.

Moreover, it seems incredible that the stay which the Debtor seeks would be lifted as

early as November 2021. The Debtor asserts, with dubious logic:

---

[5] Accessed at https://www.oshrc.gov/assets/1/6/OSHRC_FY_2020_PAR.pdf.
[6] Accessed at https://www.oshrc.gov/about/administrative-law-judges/

8. The Debtor does not intend to litigate claims until after the sale is completed, as the Debtor's cash position is likely to be improved by that time.

9. The Debtor anticipates a sale by November, which is a short time to delay the OSHA action, but meaningful to the Debtor.

10. The Debtor is currently in the early stages of the sale process, through which, the Debtor will likely generate funds for unsecured creditors.

11. Once the sale process is complete, then, at that time, there may be resources for liquidation of OSHA and the Secretary's Claims.

[21-01353-JNP, Doc. 2-5, Exh. B (Meyers Aff.), ¶¶ 8-11]. Why is the Debtor so confident that

an asset sale now "in the early stages" will be consummated, and cash will be available for the

Debtor's use, in less than three months? Our understanding is that such a sale, and the disposition

of its proceeds, would need to be approved by the bankruptcy court, and that creditors would be

given ample time and opportunity to object. For example, B.R. Rule 6004, incorporating Rule

2002(a)(2), mandates twenty-one days' notice to creditors for a sale of property of the estate.

B.R. Rule 6004(h) then automatically stays any order authorizing the sale of property for

fourteen days, to give creditors time to appeal. It is difficult to understand how the Debtor

calculates that its sale will be accomplished by November in compliance with bankruptcy court

rules. The Debtor describes this as "a short time to delay the OSHA action", but we cannot

believe, on these threadbare facts, that the delay will be so minimal. Plus, we do not see why the

Debtor's asserted preference to use cash, rather than credit, to fund its defense of the OSHRC

administrative matter should be given any persuasive weight, as the Debtor has access to $15

million in debtor-in-possession financing.

The Debtor cannot credibly promise that the indefinite stay it requests will be lifted by

November 2021. And as discussed above, even a stay through November will produce a much

longer delay for the OSHRC administrative case. If a stay of any length were to be granted, our

OSHRC hearing is likely to be delayed well into 2022. The Secretary of Labor's strong interest

in enforcing his health and safety standards will be prejudiced by the imposition of any stay,

especially since the Debtor's employees continue to be endangered by hazards in the Debtor's

still-operating factory.

### IV.     The Debtor misled the Court about the unjustified ex parte nature of its Application for a Temporary Restraining Order

Debtor's Application for Order to Show Cause [21-01353-JNP, DI 2], ¶ 107, reads:

> Notice of this Application has been provided to (i) the Office of the United States Trustee; (ii) the holders of the twenty (20) largest unsecured claims against the Debtor (on a consolidated basis); (iii) the Debtor's prepetition Lender, Tiger Finance, LLC, and its counsel; (v) the United States Attorney's Office for the District of New Jersey; (vi) Martin J. Walsh, Secretary of Labor, United States Department of Labor; (vii) the U.S. Department of Labor Occupational Safety & Health Administration; and (viii) the Occupational Safety and Health Administration, New Jersey Office. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

Despite Debtor's recitation, the Secretary of Labor did <u>not</u> receive notice of this

Application before the Temporary Restraining Order was granted. The Secretary's counsel first

discovered that the Debtor had filed an injunctive action in bankruptcy court via an oral

representation made by Debtor's counsel to the OSHRC administrative law judge during a status

conference at 10:00 a.m. on Thursday, August 26, 2021. The Temporary Restraining Order was

granted and entered into PACER three hours later, at 1:07 p.m., and only at that point did

Debtor's counsel email us a copy of its Verified Complaint and Application. To the best of our

knowledge after diligent inquiry, neither the United States Attorney in the District of New

Jersey, nor the Department of Labor's offices in Washington, D.C., nor the Area Director for the

Marlton OSHA Area Office received any actual notice of this action before the Temporary

Restraining Order was entered. This failure to effect timely notice is particularly inexcusable in

that the Debtor's counsel has been in communication with the Secretary of Labor's counsel, and

the Debtor's managers have interacted with Marlton OSHA Area Office personnel, via telephone and email, frequently over the course of the past several years. The Debtor knew exactly how to reach us, but apparently chose not to.

Bankruptcy Rule 7065, which governs injunctions, incorporates Rule 65 F.R.Civ.P. by reference. Rule 65(b) reads:

> (b) Temporary Restraining Order.
>
> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The Debtor made no effort to comply with this rule. The Application does not recite, and we cannot imagine, any reason why notice to the Secretary of Labor should not have been required. No conceivable "irreparable injury, loss, or damage" would have resulted from waiting for our opposition to be heard: the OSHRC hearing which the Debtor sought to enjoin was still twelve days away. On the contrary, the Court would have had the benefit of querying and understanding the government's position on this motion, which the Debtor's application does not fairly represent. Instead, Debtor obtained its Temporary Restraining Order without notice and without candor, in violation of the Court's rules. For this reason alone, the Temporary Restraining Order should be vacated.

**V.    The Debtor alleges a false choice between stay and default, while the Secretary of Labor stands ready to negotiate a resolution on the merits**

The Debtor disingenuously asserts that, "The OSHA Action, if not stayed will cause the Debtor to default, as there are no funds allotted for in the DIP Budget to defend OSHA's $2,017,958.00 Claim." Verified Complaint, 21-01353-JNP, Doc. 1, ¶17. As discussed, such lack of funds is a needless problem of the Debtor's own inexplicable choosing. Moreover, there is no rational outcome that would result in default. The Debtor has the option of accepting the Secretary of Labor's outstanding settlement offer; we will continue to keep that offer open through Friday, September 3, 2021. The immediate entry of a settlement would serve the Secretary's interests as well as the Debtor's: we would achieve our core purpose of enforcing our regulations so that the Debtor's employees are kept safe, our claim amount in bankruptcy would be liquidated and we would take our place in line with other unsecured creditors. Debtor could then proceed with its reorganization plan without the uncertainty and cost of litigation. The Secretary of Labor would be pleased to share the details of our settlement offer with this Court, and to engage in settlement discussions with the Debtor, in chambers.

**VI.    Conclusion**

For the reasons articulated above, the Secretary of Labor respectfully urges that the Temporary Restraining Order imposed in this matter be vacated, and that a Preliminary Injunction be denied. The Secretary of Labor's administrative action must be permitted to go forward without further delay pursuant to the police powers exception to the bankruptcy statute. The Debtor has made a wholly inadequate, and in some places meretricious, showing with respect to its entitlement to an injunction. The Secretary of Labor, by contrast, will be severely prejudiced by any delay, during which the Debtor's employees would continue to suffer a real risk of injury and even death.

WHEREFORE, The relief requested by the Secretary should be granted without delay.

Dated:  August 31, 2021
        New York, NY

                                       SEEMA NANDA
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

By: _____/s/_____
SUZANNE DEMITRIO CAMPBELL
U.S. Department of Labor
Attorneys for Complainant
Martin J. Walsh, Secretary of Labor